**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **JANE DOE, JOHN DOE #1, and JOHN DOE #2,** *individually and on behalf of all others similarly situated*, | |
| **Plaintiffs,** | |
| **v.** | 1:24-cv-678 |
| **MASTERCORP INC.,** | **Amended Class and Collective Action Complaint** |
| **Defendant.** | |

## AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.      This action arises out of Defendant's scheme of participating in the transportation of Colombian nationals or persons of Colombian origin (jointly "Colombian Workers") into and/or within the United States and employing them as live-in hotel cleaners for hotels and resorts across the country. Since approximately March 2021, Defendant MasterCorp Inc. ("MasterCorp") recruited Plaintiffs Jane Doe, John Doe #1, and John Doe #2 (collectively, "Plaintiffs") and a class of approximately 205 Colombian Workers to work as hotel cleaners at the hotel chains that MasterCorp services across the country, including in Virginia.

2.      At these sites, Colombian Workers performed cleaning services under egregious conditions, at unlawfully low pay or risk of serious financial harm and immigration-related harm. These employees worked up to 12–15 hours per day with no overtime; had unlawful deductions taken from their owed wages; were housed in crowded motel rooms; were threatened with having and/or had withheld at least $1,500 in wages owed if they complained about the conditions or sought to leave; and/or were threatened with deportation for migrant workers.

3.     Plaintiffs bring this action on behalf of themselves and a class and collective of similarly-situated Colombian Workers against Defendant MasterCorp, pursuant to:

a) The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581 *et seq.*;

b) The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, for claims including unpaid minimum wage and overtime compensation, misclassification, and unlawful deductions of their earned wages without written authorization;

c) The wage laws of the twelve states in which Plaintiffs and the class of Colombian Workers worked for MasterCorp, for unpaid straight-time and overtime compensation, state minimum wage violations, misclassification, unlawful deductions, and payroll violations, specifically: Ariz. Rev. Stat. §§ 23-351 *et seq.* ("Arizona Wage Laws"); Cal. Lab. Code §§ 201 *et seq.*, 226, 510 *et seq.*, 1171 *et seq.* ("California Wage Laws"); Colo. Rev. Stat. §§ 8-6-101 *et seq.* ("Colorado Wage Laws"); Fla. Stat. Ann. ch. 448 *et seq.* ("Florida Wage Laws"); Mich. Comp. Laws §§ 408.411 *et seq.* ("Michigan Wage Laws"); Mo. Rev. Stat. §§ 290.500 *et seq.* ("Missouri Wage Laws"); Nev. Rev. Stat. §§ 608.016 *et seq.* ("Nevada Wage Laws"); N.C. Gen. Stat. Ann. §§ 95-25.1 *et seq.* ("North Carolina Wage Laws"); S.C. Code Ann. §§ 41-10-10 *et seq.* ("South Carolina Wage Laws"); Tenn. Code Ann. §§ 50-2-101 *et seq.* ("Tennessee Wage Laws"); Va. Code Ann. §§ 40.1-28.7.7, 40.1-29 *et seq.* ("Virginia Wage Laws"); and Wis. Stat. chs. 103 and §§ 109.01-109.11 ("Wisconsin Wage Laws") (collectively, the "State Wage Laws").

d) 42 U.S.C. § 1981, for national origin discrimination; and

e)  The anti-discrimination laws of the twelve states in which Plaintiffs and the class of Colombian Workers worked for MasterCorp, for national origin discrimination, specifically: Ariz. Rev. Stat. §§ 41-1461 *et seq.* ("Arizona Anti-Discrimination Laws"); Cal. Gov't Code §§ 12900 *et seq.* ("California Anti-Discrimination Laws"); Colo. Rev. Stat. §§ 24-34-400.2 *et seq.* ("Colorado Anti-Discrimination Laws"); Fla. Stat. Ann. §§ 760.01 *et seq.* ("Florida Anti-Discrimination Laws"); Mich. Comp. Laws §§ 37.2101 *et seq.* ("Michigan Anti-Discrimination Laws"); Mo. Ann. Stat. §§ 213.010 *et seq.* ("Missouri Anti-Discrimination Laws"); Nev. Rev. Stat. §§ 613.310 *et seq.* ("Nevada Anti-Discrimination Laws"); N.C. Gen. Stat. Ann. §§ 143-422.1 *et seq.* ("North Carolina Anti-Discrimination Laws"); S.C. Code Ann. §§ 1-13-10 *et seq.* ("South Carolina Anti-Discrimination Laws");Tenn. Code Ann. §§ 4-21-101 *et seq.* ("Tennessee Anti-Discrimination Laws"); Va. Code Ann. §§ 2.2-3900 *et seq.* ("Virginia Anti-Discrimination Laws") ; and Wis. Stat. Ann. §§ 111.31 *et seq.* ("Wisconsin Anti-Discrimination Laws") (collectively, the "State Anti-Discrimination Laws").

4.      Plaintiffs also bring common-law claims of fraud and negligence on behalf of themselves and the class of Colombian Workers.

5.      Plaintiffs seek to recover unpaid wages and overtime compensation; liquidated, compensatory, and punitive damages; pre- and post-judgment interest; attorneys' fees and costs; and other appropriate relief to make themselves whole for damages suffered due to the Defendant's violations of law.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this civil action arises under the FLSA, 29 U.S.C. §§ 201 *et seq.*, the TVPRA, 18 U.S.C. §§ 1581 *et seq.*, and 42 U.S.C. § 1981.

7.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action with more than $5,000,000 in controversy exclusive of interests and costs where at least one Class Member is a citizen of a state of which Defendant is not a citizen.

8.      This Court has supplemental jurisdiction over Plaintiffs' related claims arising under the relevant state laws pursuant to 28 U.S.C § 1367(a) and Article III, Section 2 of the United States Constitution. Plaintiffs' supplemental state-law claims are so closely related to their federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because some Plaintiffs worked in MasterCorp facilities in Virginia and, specifically, within the Eastern District of Virginia.

## THE PARTIES

10.     Plaintiff Jane Doe was an hourly non-exempt employee for Defendant MasterCorp from approximately October 2022 through November 2022.

11.     Plaintiff John Doe #1 was an hourly non-exempt employee for Defendant MasterCorp from approximately May 2022 through October 2022.

12.     Plaintiff John Doe #2 was an hourly non-exempt employee for Defendant MasterCorp in 2022.

13.     For the purposes of Plaintiffs' FLSA collective action claim, Plaintiffs and putative plaintiffs are all former employees of Perennial Pete (or other related subcontractors of MasterCorp) who are Colombian Workers and who provided housekeeping services at resorts where MasterCorp was responsible for housekeeping between March 19, 2021 and the date of the filing of this Complaint.

14.     As required by the FLSA, 29 U.S.C. § 216(b), each Plaintiff has given his or her written consent to become a party to this action. Blank copies of Plaintiffs' Consent to Join Forms are filed contemporaneously with this Complaint. True and correct copies of each Plaintiff's FLSA Consent Form can be filed in-camera, upon Court request, in light of the Motion to Proceed Under Pseudonyms filed contemporaneously with this Complaint.

15.     Defendant MasterCorp is a Tennessee corporation with its principal place of business at 4700 Millenia Blvd., Suite 380, Orlando, Florida 32839. At all times relevant to this action, MasterCorp has been (i) an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, and (ii) Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g).

## FACTUAL ALLEGATIONS

16.     MasterCorp is a staffing agency with over 7,500 employees that provides cleaning services to luxury hotel chains and resorts across the country.

17.     During the fall and winter of 2022, MasterCorp recruited Plaintiffs Jane Doe, John Doe #1, and John Doe #2 (collectively, "Plaintiffs") to work as hotel cleaners at MasterCorp's client sites. MasterCorp paid for and arranged their travel from Colombia to the United States and/or within the United States to travel to MasterCorp's client sites.

18.     MasterCorp promised Plaintiffs that it would pay for their travel to the hotels they would work in, provide stable U.S. employment, pay $13 per hour in wages, and provide housing accommodations.

19.     Once Plaintiffs were under MasterCorp's control, MasterCorp subjected Plaintiffs, who lack family and community ties in the U.S. and do not speak English, or speak limited English, to grueling working conditions and substandard living conditions, and depending on the particular state, at an unlawfully low rate of pay.

20.     Upon Plaintiffs' arrival at MasterCorp's client-site destinations, Plaintiffs often worked up to 12–15 hours per day cleaning hotel rooms, for at least six days per week, and few, if any, days off.

21.     Plaintiffs typically began work at or around 7:00 am and would sometimes work until 1:00 am–2:00 am the following day.

22.     Plaintiffs worked harder and cleaned more rooms than other employees.

23.     Plaintiffs were not paid for all compensable hours worked and/or were not paid any wages.

24.     Plaintiffs and the Colombian Workers were not paid overtime compensation for hours worked over 40 in a workweek.

25.     Plaintiffs had little-to-no savings upon beginning their employment with MasterCorp and were therefore reliant on MasterCorp for food and shelter until their first paycheck arrived.

26.     MasterCorp made the living arrangements for the Colombian Workers, either on-site or in motels. The living arrangements were often crowded.

27.     A weekly rent of at least $80 was deducted from Plaintiffs' pay without written authorization, thus clawing back these costs from Plaintiffs' earned wages without written authorization.

28.      When MasterCorp paid Plaintiffs and other similarly-situated Colombian Workers, it did so by payments to the contractor generally, Perennial Pete General Services LLC and/or Perennial Pete Landscaping LLC (collectively, "Perennial Pete"). Perennial Pete or one of its affiliated entities then paid the Colombian Workers, usually by check.

29.     Plaintiffs never signed any written employment agreement with MasterCorp, Perennial Pete, or any other of its affiliate or shell companies. However, MasterCorp told Plaintiffs that they had agreed to a "verbal" contract, which they accepted the moment they boarded the plane to a client site with a MasterCorp-provided ticket.

30.     A former MasterCorp employee, "AS," effectuated the scheme.

31.     AS repeatedly threatened Plaintiffs and other similarly situated Colombian Workers that if they tried to leave prior to the expiration of the four-month contract that they had allegedly agreed to, MasterCorp would withhold at least $1,500 of wages for work already performed, which would constitute over 115 hours—nearly three weeks based on a 40-hour workweek—of work for Plaintiffs.

32.     For low-wage workers in Plaintiffs' circumstances, the withholding of $1,500 would and/or did constitute serious financial harm. By threatening to withhold upwards of two weeks' pay if Plaintiffs tried to leave MasterCorp's employment, MasterCorp required Plaintiffs to continue working for MasterCorp or risk serious financial harm.

33.     MasterCorp deducted the $1,500 at the start of Plaintiffs' employment, such that Plaintiffs began their employment in debt to MasterCorp. Plaintiffs did not earn any wages until they exceeded the $1,500 clawed back from their earnings.

34.     MasterCorp promised to return the $1,500 if Plaintiffs worked for the duration of their alleged contracts.

35.     When Plaintiffs left MasterCorp's employment, MasterCorp withheld the $1,500 in Plaintiffs' earned wages.

36.     In addition to clawing back at least $1,500 of Plaintiffs' earned wages, MasterCorp subjected Plaintiffs to wrongful labor conditions by leveraging its control over Plaintiffs' housing and immigration status, among other things.

37.     When Plaintiffs sought to leave and/or did leave MasterCorp's employment, AS ordered Plaintiffs to immediately vacate the MasterCorp-provided housing in which they were living and dependent on for shelter.

38.      If Plaintiffs sought to leave MasterCorp's employment, AS made various immigration-related threats, including telling Plaintiffs that if they left, they would face deportation.

39.     Plaintiffs were misclassified as independent contractors even though MasterCorp controlled all aspects of their work. Consequently, MasterCorp failed to make any deductions from Plaintiffs' paychecks, including for employer-side taxes, which deprived Plaintiffs of the benefits to which they were entitled as employees.

40.     Neither MasterCorp nor Perennial Pete provided Plaintiffs with paystubs and/or did not provide information relating to the number of hours worked and the wages paid for those hours.

41.     Plaintiffs systematically observed, as to their own work locations, and learned from other Colombian Workers about other work locations, that they experienced similar work and working conditions. Since March 2021, MasterCorp subjected approximately 205 Colombian Workers to the same conditions as Plaintiffs, including:

a)  Recruiting workers from Colombia (or through other workers of Colombian national origin) to clean hotels at MasterCorp's client sites across various states;

b)  Failing to provide workers with sufficient funds prior to paying the first paycheck (*i.e.*, creating a debt), resulting in common problems for workers in terms of access to food and/or other necessities;

c)  Requiring, encouraging, or permitting some workers to work up to 12–15-hour days, six days per week, with only one 30-minute lunch break;

d)  Paying them through various Perennial Pete-affiliated entities;

e)  Failing to pay them for all compensable hours;

f)  Failing to maintain and provide proper payroll information in accordance with the law;

g)  Engaging in retaliatory conduct against Colombian Workers who complained, such as withholding at least $1,500 in their earned wages if they sought to leave its employment or threatening them with immigration-related consequences, including deportation, if they attempted to quit;

h)  Housing them in crowded motel rooms;

i)  Clawing back deductions from their earned wages, including deductions for rent in the amount of $80 per week, without written authorization;

j) Misclassifying them as independent contractors, thereby failing to make deductions for employer-side taxes and depriving them of the benefits they were entitled to as employees; and/or

k) Subjecting them to worse working conditions than other MasterCorp employees.

42. MasterCorp knew or should have known that it obtained Plaintiffs' and other similarly-situated Colombian Workers' labor at a below market and unlawfully low rate such that they were not compensated for the expansive scope of labor they performed, especially considering the overtime hours worked.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring their TVPRA, Section 1981, State Wage and Anti-Discrimination Law claims, and state common-law claims on behalf of themselves and a proposed class of the approximately 205 similarly-situated Colombian Workers (the "Class" or "Class Members"), pursuant to Federal Rule of Civil Procedure 23.

44. The Class is defined as: Employees of Perennial Pete (or other related subcontractors of MasterCorp) who are Colombian nationals or of Colombian origin (combined as "Colombian Workers") and who provided housekeeping services at resorts where MasterCorp was responsible for housekeeping between March 19, 2021 and the date of the filing of this Complaint (the "Class Period").

45. **Rule 23(a)(1)—Numerosity.** The Class is comprised of approximately 205 Colombian Workers, making joinder impracticable.

46. **Rule 23(a)(2) and (c)(4)—Commonality and Particular Issues.** This action involves substantial questions of fact and/or law common to the claims of each Class Member, including, but not limited to whether Defendant:

a) Engaged in and/or knowingly benefitted from, participated in, and had knowledge or reason to know of a scheme or venture of extracting labor from Plaintiffs and Class Members through financial and legal coercion;

b) Maintained a practice through a now former MasterCorp employee of threatening to withhold and/or actually withholding approximately $1,500 from Plaintiffs' and other Class Members' earned wages if they sought to leave Defendant's employment;

c) Clawed back deductions from Plaintiffs' and Class Members' earned wages, including at least $80 per week to pay for Defendant-provided housing, without written authorization;

d) Subjected Plaintiffs and Class Members to harsher and longer working conditions than other workers or employees;

e) Improperly withheld housing accommodations by ordering Plaintiffs and the Class Members out of the Defendant-provided motel rooms in retaliation for Plaintiffs and the Class Members complaining about underpayment of wages and poor working conditions; and/or

f) Threatened Plaintiffs with immigration consequences, including deportation, when they sought to leave Defendant's employment.

47. **Rule 23(a)(3)—Typicality.** Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent. Each Plaintiff and Class Member was the victim of an unlawful scheme to coerce them to provide labor to MasterCorp for unlawfully and severely low payment. In addition, each Plaintiff and Class Member was subject to the other Class Claims alleged.

48.     **Rule 23(a)(4) and (g)—Adequacy.**  Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have no interests that are antagonistic to the interests of the Class as a whole. They are committed to the vigorous prosecution of this action and have retained competent counsel who are experienced in wage and hour law, trafficking claims, anti-discrimination claims, and complex class action litigation.

49.     **Rule 23(b)(3)—Predominance and Superiority.**  Questions of fact and/or law common to the Class Members predominate over any questions affecting only individual members and a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Defendant has engaged in a common course of conduct directed at the entirety of the Class. There are common questions of law as to all federal claims, which apply uniformly across all the states where Plaintiffs and Class Members worked. With respect to the common-law claims, there are no material differences in the law on the relevant issues and/or any differences determined by the Court can be readily managed through subclasses and/or issue classes.

50.     As used in Counts I and III–VI, "Plaintiffs" refers to the named Plaintiffs and all members of the Class they represent.

## COLLECTIVE ACTION ALLEGATIONS

51.      This action is maintainable as an "opt-in" collective action as to claims for unpaid wages, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

52.     Plaintiffs bring Count II on behalf of themselves and other employees of Perennial Pete (or other related subcontractors of MasterCorp) who are Colombian Workers and who provided housekeeping services at resorts where MasterCorp was responsible for housekeeping between March 19, 2021 and the date of the filing of this Complaint, who did not receive wages

for all compensable hours and/or overtime for all hours worked over 40 in a workweek and who elect to join this action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective").

53.     Upon information and belief, there are numerous former non-exempt employees of Defendant who are similarly situated to Plaintiffs. The precise number of similarly situated employees is estimated by Defendant based on its records and information through invoicing by Perennial Pete or one of its affiliates.

54.     Because these similarly situated employees are readily identifiable to Defendant and may be located through its records, they may be readily notified of this action and allowed to opt into it for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

55.     A collective action is appropriate in this case because Plaintiffs and potential plaintiffs: (a) were employees of Defendant during the statutory period; (b) had similar duties and performed similar tasks; (c) allege similar violations of the FLSA in the form of unlawful compensation policies; and (d) seek the same remedies.

56.     Plaintiffs are adequate representatives of the collective class because they were non-exempt employees of Perennial Pete (or other related subcontractors of MasterCorp) who provided housekeeping services at resorts where MasterCorp was responsible for housekeeping and who did not receive wages for all compensable hours and/or overtime for all hours worked over 40 in a workweek.

57.     As used in Count II, "Plaintiffs" refers to the named Plaintiffs and all members of the FLSA Collective they represent.

## **TOLLING AND ESTOPPEL**

58.     All statutes of limitations are tolled based on the discovery rule, the doctrines of equitable estoppel and/or equitable tolling, and principles of equity. This is based on the agreement between the parties as to tolling, among the other allegations herein (such as Defendant's fraudulent cover-up of Plaintiffs' and Class Members' access to information about their rights and segregating them).

## **COUNT I**
### **Violation of the TVPRA, 18 U.S.C. §§ 1581 *et seq*. – Forced Labor and Trafficking (Brought by Plaintiffs as a Class Action)**

59.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     Plaintiffs bring this claim on behalf of themselves and the Class Members.

61.     The TVPRA allows victims to bring a civil action against anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).

62.     Defendant knowingly obtained and/or provided Plaintiffs' labor by means of threats of serious financial and/or immigration-related harm in violation of 18 U.S.C. § 1589(a).

63.     Defendant required Plaintiffs to continue working as hotel cleaners on its client sites by threatening and/or imposing serious financial and/or immigration-related harm. Specifically, Defendant:

a) Threatened to and/or did withhold at least $1,500 of Plaintiffs' earned wages if they sought to leave MasterCorp's employment;

b) Required them to begin their employment in debt to MasterCorp;

c)   Clawed back various deductions from their earned wages, including deductions for "rent" in the amount of $80 per week, without written authorization;

d)   Ordered them to immediately vacate MasterCorp-provided housing when they quit MasterCorp's employment; and/or

e)   Threatened them with immigration-related consequences, including deportation, if they attempted to quit MasterCorp's employment.

64.    Defendant benefited financially from obtaining Plaintiffs' labor at an under-market and unlawfully low rate, including by avoiding employer-side taxes, unemployment and workers' compensation premiums, and benefits, among other things.

65.    Additionally, and/or alternatively, Defendant knowingly recruited, harbored, transported, provided, and/or obtained Plaintiffs for labor or services in furtherance of Defendant's imposition of forced labor in violation of 18 U.S.C. § 1590.

66.    As a result of Defendant's violations of the forced labor and trafficking provisions of the U.S. Code, Plaintiffs suffered substantial emotional, mental, and financial harm.

67.    Plaintiffs are entitled to recover damages arising from Defendant's violations of the forced labor and trafficking provisions of the U.S. Code, as well as reasonable attorneys' fees and costs, under 18 U.S.C. § 1595(a).

## <u>COUNT II</u>
**Violation of the FLSA, 29 U.S.C. §§ 201 *et seq.* – Unpaid Minimum Wage and Overtime Compensation**
**(Brought by Plaintiffs as a Collective Action)**

68.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

69.    Plaintiffs bring this claim on behalf of themselves and the FLSA Collective.

70.     At all times relevant to this action, Plaintiffs were employees and Defendant was an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq.*

71.     Pursuant to Section 6(a) of the FLSA, 29 U.S.C. § 206(a), Defendant was required to pay Plaintiffs minimum wages for all compensable hours.

72.     Pursuant to Section 7(a) of the FLSA, 29 U.S.C. § 207(a), Defendant was required to pay Plaintiffs the greater of time and one-half the hourly wage rate they were promised when hired or the applicable state minimum wage rate for their hours worked in excess of 40 per workweek.

73.     Plaintiffs regularly worked more than 40 hours in a workweek, often working up to 12–15 hours per day.

74.     Defendant failed to pay Plaintiffs for all compensable hours worked and/or failed to pay Plaintiffs any wages at all.

75.     Defendant failed to pay Plaintiffs overtime compensation for all hours that they worked in excess of 40 hours in a workweek.

76.     Defendant had a policy of withholding approximately $1,500 from Plaintiffs' earned wages without written authorization, reducing their wages below the applicable minimum wage and overtime wage rates.

77.     Defendant had a policy of clawing back deductions from Plaintiffs' earned wages, withholding $80 per week as payment for housing, without written authorization.

78.     Defendant violated the requirements of the FLSA by failing to pay its employees the applicable minimum wage and/or overtime wage rates.

79.     At all times material hereto, Defendant failed to maintain proper time and payroll records as required by Section 211(c) of the FLSA and failed to make legally required payments for Social Security and Medicare on behalf of Plaintiffs as mandated by the FLSA.

80.     Defendant failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

81.     Defendant was aware or should have been aware that the practices described herein were unlawful. Defendant did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' and FLSA Collective Members' compensation.

82.     Plaintiffs and the members of the FLSA Collective are entitled to all unpaid wages owed to them by Defendant.

83.     Defendant's actions were willful, as evidenced by the threats it made to Plaintiffs, including threatening financial harm and deportation, when Plaintiffs complained about Defendant's unlawful working conditions.

84.     Due to the intentional, willful, and unlawful acts of Defendant, Plaintiffs are entitled to recover an additional amount equal to their unpaid wages as liquidated damages, in addition to attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. § 216(b).

## <u>COUNT III</u>
### Violation of 42 U.S.C. § 1981—National Origin Discrimination
### (Brought by Plaintiffs as a Class Action)

85.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

86.     Plaintiffs bring this claim pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, on behalf of themselves and the Class.

87.     Defendant subjected Plaintiffs and Class Members to worse working conditions than employees of other national origins.

88.     Defendant required Plaintiffs and other Colombian Workers to work harder and clean more rooms than other employees.

89.     Plaintiffs and other Colombian Workers received less pay and benefits than workers of other national origins.

90.     Plaintiffs and other Colombian Workers did not get paid overtime wages and were misclassified as independent contractors.

91.     Defendant fostered, condoned, accepted, ratified, and/or otherwise failed to prevent or remedy discriminatory conduct based on national origin.

92.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiffs and the Class Members have suffered economic damages and mental anguish for which they are entitled to an award of damages.

93.     Defendant's unlawful, discriminatory actions constitute reckless, malicious, willful, and wanton violations of § 1981 for which Plaintiffs and Class Members are entitled to an award of punitive damages.

**COUNT IV**
**Violation of State Wage Laws**
**(Brought by Plaintiffs as a Class Action)[1]**

94.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

---

[1] Damages for Defendant's violations of the State Wage Laws are recoverable under Plaintiffs' class TVPRA claim (Count I). Count IV is included with respect to the twelve states in which the Class Members worked for Fed. R. Civ. P. 8 notice purposes. Plaintiffs seek damages for their State Wage Law claims as part of the damages sought under the TVPRA, or, in the alternative, as standalone claims.

95.     Plaintiffs bring this claim on behalf of themselves and the Class pursuant to the State Wage Laws of the states in which they worked, specifically:

a)  Arizona: Ariz. Rev. Stat. §§ 23-350 *et seq.*;

b)  California: Cal. Lab. Code §§ 201 *et seq.* (including violation of wage-statement transparency law, Cal Lab. Code § 226), 510 *et seq.*, 1171 *et seq.*;

c)  Colorado: Colo. Rev. Stat. §§ 8-6-101 *et seq.*;

d)  Florida: Fla. Stat. Ann. ch. 448 *et seq.*;

e)  Michigan: Mich. Comp. Laws §§ 408.411 *et seq.*;

f)  Missouri: Mo. Rev. Stat. §§ 290.500 *et seq.*;

g)  Nevada: Nev. Rev. Stat. §§ 608.016 *et seq.*;

h)  N.C. Gen. Stat. Ann. §§ 95-25.1 *et seq.*;

i)  South Carolina: S.C. Code Ann. §§ 41-10-10 *et seq.*;

j)  Tenn. Code Ann. §§ 50-2-101 *et seq.*;

k)  Virginia: Va. Code Ann. §§ 40.1-28.7.7, 40.1-29 *et seq.*; and

l)  Wisconsin: Wis. Stat. ch. 103 and §§ 109.01-109.11.

96.     At all times relevant to this action, Plaintiffs were employees and Defendant was an employer within the meaning of the State Wage Laws of the states in which they worked.

97.     Defendant unlawfully failed or refused to pay Plaintiffs' wages for all compensable hours worked, including overtime compensation and certain state minimum wage rates.

98.     Defendant unlawfully misclassified Plaintiffs as independent contractors, despite controlling all aspects of their work.

99.     Defendant clawed back unauthorized deductions from Plaintiffs' paychecks, without written authorization, in violation of the wage laws of the states in which Plaintiffs and Class Members worked.

100.    Defendant violated the State Wage Laws.

101.    Defendant's violations of the State Wage Laws were willful and not in good faith, as evidenced by the threats it made to Plaintiffs, including threatening financial harm and deportation when Plaintiffs complained about Defendant's unlawful working conditions.

102.    Defendant is liable to Plaintiffs under this Count for their unpaid wages, statutory damages and/or punitive damages, plus interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court pursuant to applicable State Wage Laws.

## COUNT V
**Violation of State Anti-Discrimination Laws—National Origin Discrimination**
**(Brought by Plaintiffs as a Class Action)**

103.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

104.    Plaintiffs bring this claim on behalf of themselves and the Class pursuant to the State Anti-Discrimination Laws of the states in which they worked, specifically:

a)  Arizona: Ariz. Rev. Stat. §§ 41-1461 *et seq.*;

b)  California: Cal. Gov't Code §§ 12900 *et seq.*;

c)  Colorado: Colo. Rev. Stat. §§ 24-34-400.2 *et seq.*;

d)  Florida: Fla. Stat. Ann. §§ 760.01 *et seq.*;

e)  Michigan: Mich. Comp. Laws §§ 37.2101 *et seq.*;

f)  Missouri: Mo. Ann. Stat. §§ 213.010 *et seq.*;

g)  Nevada: Nev. Rev. Stat. §§ 613.310 *et seq.*;

h) N.C. Gen. Stat. Ann. §§ 143-422.1 *et seq.*;

i) South Carolina: S.C. Code Ann. §§ 1-13-10 *et seq.*;

j) Tenn. Code Ann. §§ 4-21-101 *et seq.*;

k) Virginia: Va. Code Ann. §§ 2.2-3900 *et seq.*; and

l) Wisconsin: Wis. Stat. Ann. §§ 111.31 *et seq.*

105.    At all times relevant to this action, Plaintiffs were employees and Defendant was an employer within the meaning of the State Anti-Discrimination Laws of the states in which they worked.

106.    Defendant subjected Plaintiffs and Class Members to worse working conditions, wages, and benefits than employees of other national origins.

107.    Defendant required Plaintiffs and other Colombian Workers to work harder and clean more rooms than other employees.

108.    Plaintiffs and other Colombian Workers received less pay and benefits than workers of other national origins.

109.    Plaintiffs and other Colombian Workers did not get paid overtime wages and were misclassified as independent contractors.

110.    Defendant fostered, condoned, accepted, ratified, and/or otherwise failed to prevent or remedy discriminatory conduct based on national origin.

111.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the State Anti-Discrimination Laws, Plaintiffs and the Class Members have suffered economic damages and mental anguish for which they are entitled to an award of damages.

## COUNT VI
### Fraud and/or Fraudulent Nondisclosure
### (Brought by Plaintiffs as a Class Action)

112.    Plaintiffs repeat and reallege the foregoing paragraphs of this complaint as if fully set forth herein.

113.    Plaintiffs bring this claim on behalf of themselves and the Class in the alternative, if it is determined that these workers are not entitled to the rights of employees and/or were not subjected to wrongful conduct in violation of the TVPRA.

114.    Defendant intentionally misrepresented and/or failed to disclose the working conditions to which Plaintiffs would be subject.

115.    Defendant intentionally failed to disclose the material fact that it would withhold $1,500 of Plaintiffs' earned wages if they left Defendant's employment before four months.

116.    Defendant intentionally misrepresented and/or failed to disclose the material fact of the hours it would expect Plaintiffs to work, such as that they would be working 12–15 hours per day.

117.    Defendant intentionally misrepresented and/or failed to disclose the material fact that Plaintiffs' visas did not make them eligible to work in the United States.

118.    Defendant knew these intentional misrepresentations were false when they made them.

119.    The non-disclosures described herein were not only material, but Defendant had a duty to disclose these facts based on its superior knowledge, partial representations that were made false by dint of non-disclosed information, and duties owed to vulnerable workers who had little-to-no means or access to accurate sources of information about their rights based on the very conduct of Defendant.

120.     Plaintiffs reasonably relied on Defendant's misrepresentations about the job when they decided to travel to work for MasterCorp and/or the fraudulent omissions were material. Had Plaintiffs known the truth, it would have altered their conduct.

121.     As a direct and proximate result of Defendant's fraudulent conduct, Plaintiffs and the Class Members have suffered economic damages for which they are entitled to an award of actual, consequential, and/or punitive damages.

## COUNT VII
### Negligence
### (Brought by Plaintiffs as a Class Action)

122.     Plaintiffs repeat and reallege the foregoing paragraphs of this complaint as if fully set forth herein.

123.     Plaintiffs bring this claim on behalf of themselves and the Class, also asserted in the alternative.

124.     Defendant owed a duty of care to Plaintiffs by dint of having recruited them.

125.     Defendant breached its duty of care to Plaintiffs in permitting its agents to engage in a trafficking scheme, whereby Plaintiffs were forced to labor for Defendant against their will.

126.     Defendant breached its duty of care to ensure that Plaintiffs were compensated in accordance with the law and not made to suffer unlawful retaliation.

127.     Defendant knew or should have known of the violations of Plaintiffs' rights detailed herein.

128.     Defendant caused Plaintiffs' trafficking and wage injuries by overseeing a program in which Plaintiffs were trafficked and subjected to forced labor, grueling work hours, and paid unlawfully low wages.

129.    Plaintiffs incurred significant injuries as a result of Defendant's breaches, including being subjected to a forced labor and trafficking scheme and working grueling hours for unlawfully low pay, among other things.

130.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class Members have suffered damages for which they are entitled to an award of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

1.    Certify this matter as a Class Action under Fed. R. Civ. P. 23(b)(3), or, in the alternative, under Fed. R. Civ. P. 23(c)(4), for the appropriate issues or counts and appoint Plaintiffs as the representatives of the Class and the undersigned attorneys as Class Counsel;

2.    Certify this matter as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) for Count II;

3.    Grant judgment against Defendant, and in favor of Plaintiffs and Class Members, in the amount of economic, non-economic, and punitive damages, and reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1595;

4.    Grant judgment against Defendant, and in favor of Plaintiffs and FLSA Collective Members, in the amount of Plaintiffs' and FLSA Collective Members' unpaid wages plus an equal amount in liquidated damages and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

5.    Grant judgment against Defendant, and in favor of Plaintiffs and Class Members, in the amount of economic, non-economic, and punitive damages, and reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1981;

6.    Grant judgment against Defendant, and in favor of Plaintiffs and Class Members, in the amount of Plaintiffs' and Class Members' unpaid wages and benefits; double or triple unpaid

wages and benefits in liquidated damages where applicable; and reasonable attorneys' fees and costs, pursuant to the applicable State Wage Laws, *see, e.g.*, the Virginia Wage Laws, Va. Code Ann. §§ 40.1-28.7.7, 40.1-29 *et seq.*;

7.  Grant judgment against Defendant, and in favor of Plaintiffs and Class Members, in the amount of economic, non-economic, and punitive damages, and reasonable attorneys' fees and costs, pursuant to the applicable State Anti-Discrimination Laws, *see, e.g.*, the Virginia Anti-Discrimination Laws, Va. Code Ann. §§ 2.2-3900 *et seq.*;

8.  Grant judgment against Defendant, and in favor of Plaintiffs and Class Members, in the amount of economic damages, attorneys' fees, and costs for fraudulent misrepresentation;

9.  Grant judgment against Defendant, and in favor of Plaintiffs and Class Members, in the amount of economic damages, attorneys' fees, and costs for negligence;

10.  Award Plaintiffs and Class Members prejudgment interest at the legal rate from the date of violations until judgment, and post-judgment interest at the legal rate thereafter; and

11.  Award such other relief as this Court deems just and proper.

Dated: May 10, 2024                                      Respectfully submitted,

*/s/ Mark Hanna*
Mark Hanna (45442)
Nicolas Mendoza (*pro hac vice* forthcoming)
Nicole Rubin (*pro hac vice* forthcoming)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: (202) 223-2620
mhanna@murphypllc.com
nmendoza@murphypllc.com
nrubin@murphypllc.com

Rachel Geman (*pro hac vice* forthcoming)
Wesley Dozier (*pro hac vice* forthcoming)
Lieff, Cabraser, Heimann & Bernstein, LLP

250 Hudson Street, 8th Floor
New York, NY 10013
Phone: (250) 355-9500
rgeman@lchb.com
wdozier@lchb.com

*Counsel for Plaintiffs*